# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **COREGIS INSURANCE COMPANY,** | : |
| | : |
| **Plaintiff** | : |
| | : |
| v. | : |
| | : Civil Action No. 1:03-CV-920 |
| **CITY OF HARRISBURG, et al.,** | : |
| | : |
| Defendants and Third-Party | : (Judge Kane) |
| Plaintiff | : |
| | : |
| v. | : |
| | : |
| **ST. PAUL FIRE AND MARINE** | : |
| **INSURANCE COMPANY, et al.,** | : |
| | : |
| Third-Party Defendants | : |

## MEMORANDUM AND ORDER

Pending before the Court are motions by Third-Party Defendants CNA Financial Corporation and St. Paul Fire & Marine Insurance Company to strike the expert report of Douglas Talley, which Harrisburg offered in support of the city's motions for summary judgment against both parties. (Doc. Nos. 232, 236.) Harrisburg filed a consolidated response to both motions. (Doc. No. 239.) For the reasons that briefly follow, the motions will be granted and the expert report will be stricken.

## I.   Introduction

On June 2, 2003, Coregis Insurance Company commenced the instant action by filing a complaint seeking a declaratory judgment that certain insurance policies issued to Harrisburg and Dauphin County do not provide coverage for the underlying litigation of Steven D. Crawford v.

Commonwealth of Pennsylvania, et al., Civil Action No. 1:CV-03-693 ("Crawford").[1]  Harrisburg and Dauphin County each answered Coregis's complaint on August 4, 2003.  Thereafter, on August 14, 2003, Harrisburg filed a third-party complaint against a number of insurance companies that allegedly issued policies to the city between 1972 and 2003, including CNA and St. Paul.  All of the insurance companies denied that Harrisburg was entitled to coverage under the respective policies.  By the third-party complaint, Harrisburg seeks, inter alia, entry of an order declaring that the third-party defendants are under a duty to defend Harrisburg and its additional insureds under each of the subject insurance policies.

Harrisburg has alleged that CNA is obligated to provide the city with coverage for the Crawford litigation pursuant to general commercial liability policies CNA issued Harrisburg between 1972 and 1976.  Harrisburg has been unable to produce copies of the CNA polices issued relating to these years, and has endeavored to prove that CNA is obligated to provide coverage under these missing policies by the introduction of extrinsic evidence.  Presently, Harrisburg's claims to coverage under these policies are subject to cross-motions for summary judgment that are pending before the Court.  Harrisburg has also claimed coverage under certain insurance policies that USF&G issued to the city between 1976 and 1982.[2]  Although Harrisburg was unable to locate any of these policies, St.

---

[1] Steven D. Crawford commenced the underlying civil rights action following his 2003 release from prison after having been incarcerated for 28 years for the murder of John Eddie Mitchell. Crawford was released after his attorney discovered certain potentially exculpatory evidence that allegedly had been suppressed by law enforcement officers involved in Crawford's prosecution and trial. Crawford also alleges that these officers altered evidence and testified falsely during each of Crawford's three trials held in 1974, 1977, and 1978.

[2] St. Paul merged with USF&G in 1998 and, as a result, USF&G became a wholly-owned subsidiary of St. Paul.

Paul recently discovered copies of the policies and provided them to Harrisburg.  Harrisburg's claims to coverage under these policies is also subject to pending cross-motions for summary judgment.

Harrisburg commissioned Douglas Talley's expert report ("Talley Report") ostensibly in an effort to assist with "reconstruction" of the lost CNA policies, and to provide the Court with information regarding the "types" of coverage provided in both the CNA and USF&G policies.  (Doc. No. 239, at 1-2.)  Additionally, Harrisburg claims that the Talley Report "analyzes the proper scope that any coverage analysis should entail."  (Id., at 3.)  CNA and St. Paul each argue that the Talley Report should be stricken because the purported expert impermissibly offers legal conclusions as to the proper interpretation of insurance policies and because the opinions rendered in the report will not assist the Court to understand the evidence that has been offered to prove the terms and conditions of various insurance policies under which Harrisburg has claimed coverage.  Harrisburg defends submission of the Talley Report by asserting that the report meets the requirements of Federal Rule of Evidence 702, asserting that the expert report "is helpful in understanding issues and practices in the insurance industry," and by arguing that the city has a legal right to submit expert opinions where another party has offered lay opinion testimony.

**II.     Discussion**

Federal Rule of Evidence 702 provides as follows:

> If scientific, technical, or other specialized knowledge will assist
> the trier of fact to understand the evidence or to determine a fact
> issue, a witness qualified as an expert by knowledge, skill,
> experience, training, or education, may testify thereto in the form of
> an opinion or otherwise, if (1) the testimony is based upon sufficient
> facts or data, (2) the testimony is the product of reliable
> principles and methods, and (3) the witness has applied the

principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Whether to permit expert testimony on a particular issue is left to the discretion of the trial court.  First Nat'l State Bank of New Jersey v. Reliance Elec. Co., 668 F.2d 725, 731 (3d Cir. 1981).  In considering whether to allow expert testimony, a district court must limit expert testimony so as to not allow the expert to offer opinion on "what the law required" or "testify as to the governing law."  United States v. Leo, 941 F.2d 181, 196-97 (3d Cir. 1991).[3]  As one court has explained:

> The rule prohibiting experts from providing their legal opinions or conclusions is so well established that it is often deemed a basic premise or assumption of evidence law – a kind of axiomatic principle.  In fact, every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law.

In re Initial Public Offering Lit., 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (internal quotations omitted) (collecting cases, including Leo).[4]

Upon consideration of this standard, the Court turns to the Talley Report.  Mr. Talley

---

[3] The need to restrict experts from offering legal conclusions is obviously most important where the expert is offering testimony to a jury as fact-finder.  In this case, the Court is acting as the finder of fact.  Nevertheless, the Court finds no reason to apply a more relaxed standard in this case.  As discussed in this opinion, the Court finds that Harrisburg's proffered expert's opinion impermissibly purports to render legal conclusions, and is in any event unnecessary and unhelpful to the Court in construing the terms and conditions of the insurance policies under which Harrisburg has asserted a right to coverage.  Additionally, the Court finds it would be inappropriate to require that CNA or St. Paul be put to the expense of commissioning their own expert reports to rebut the Talley Report.

[4] See also Weinstein's Federal Evidence § 702.03[3] ("Expert testimony is not admissible to inform the finder of fact as to the law that will be [applied] to the facts in deciding the case. . . . Expert witnesses are also prohibited from drawing legal conclusions . . . . This proscription precludes an expert from testifying in the language of statutes, regulations or other legal standards that are at the heart of the case").

represents that he was retained in order "to provide expert witness services in reconstructing the comprehensive general liability sections of certain business multi-peril insurance policies that CNA and USF&G sold to the City and analyzing those policies as they might relate to the civil rights lawsuit of Steven D. Crawford v. Commonwealth of Pennsylvania . . . ." (Talley Rept. ¶ 13.)[5] After making several representations as to his professional background and credentials, Mr. Talley attests that the insurance policies at issue contain standard language that has been used in the insurance industry for 50 years. (Id. ¶ 14.) Talley makes additional representations concerning the elements and general structure of comprehensive general liability insurance policies, and offers his conclusions about the types of insurance policies CNA and St. Paul issued to the city. (Id. ¶¶ 17-28.)

Subsequently, however, Talley proceeds to address the fundamental legal question before the Court: whether CNA or St. Paul are obligated to provide Harrisburg with a defense and indemnity for the Crawford action:

> I have also been asked to offer an opinion on whether the comprehensive general liability coverage of the Continental Policies and the USF&G Policies potentially afford coverage to the City for its legal defense of, and any resulting indemnity obligation for, the Crawford lawsuit. A fair reading of the Crawford complaint against the City is not confined to damages for false arrest and false imprisonment, but alleges damages also for "extreme emotional distress, embarrassment, humiliation and fear" due to the City's alleged violation of certain federal civil rights statutes, 42 U.S.C. §§ 1983, 1985 and 1986, arising from negligent training and supervision of the police force and from racial discrimination. (Crawford Complaint §§ 90 and 99). The Crawford complaint specifically

---

[5] With respect to the USF&G policies, it is not clear why the Court requires any assistance in "reconstructing" the policies, as they have been located and provided to Harrisburg.

> alleges that the City "lacked sufficient safeguards to prevent their agents from concealing exculpatory evidence and from testifying falsely" and had "failed to adequately train their employees so as to prevent them from altering evidence, concealing evidence and/or testifying falsely". (Crawford Complaint §§ 67 and 68).
>
> * * *
>
> This alleged misconduct by the City, if proven, would essentially be a finding of negligence or other tortuous [sic] conduct that would have occurred during the period of the Continental Policies and the USF&G Policies. It is universally accepted a principle of insurance analysis that comprehensive general liability policies cover acts of negligence and other tortuous [sic] conduct unless expressly excluded.

(Id. ¶¶ 29-30.) The Court finds that Talley's ultimate opinions represent inappropriate legal conclusions about the scope of the Crawford complaint, and the proper means of interpreting the CNA and USF&G policies in light of his assessment of the complaint. In offering this legal analysis, Talley strays from offering expert opinion of factual issues into an impermissible effort to advise this Court about pure legal questions regarding the application of Pennsylvania law to the polices in issue. Moreover, Talley goes even further when he proceeds to offer his opinion about the proper interpretation of whether a claim for "extreme emotional distress" constitutes "bodily injury" under the policies in question and relevant Pennsylvania insurance law:

> The question should also be addressed whether the allegations of "extreme emotional distress, embarrassment, humiliation and fear" fall within the definition of "bodily injury" in the Continental Policies and USF&G Policies, thereby triggering defense and indemnity coverage for the City in the Crawford lawsuit. . . . My own review of the issue leads me to conclude that a claim for "extreme emotional distress" would be deemed a claim for "bodily injury" under Pennsylvania state law. . . . Currently,

> the ruling statement of law on this issue is an appellate
> decision in the case Anthem Casualty Insurance Company v.
> Miller, 729 A.2d 1227 (Pa. Sup. Ct. 1999), where the court
> found that a claim for negligent infliction of emotion[al]
> distress without any physical injury did constitute a claim for
> "bodily injury" under an automobile liability insurance policy.
> The ruling of the Anthem case would, therefore, favor a finding
> of coverage for the City under the Continental Policies and the
> USF&G Policies in the Crawford case.

(Id. ¶ 31.)  The Court is especially troubled by this particular paragraph of Talley's report. Talley's legal analysis reads as though it were stripped directly from Harrisburg's legal papers filed in this case in order to bolster the city's argument that Anthem somehow represents binding law on the proper scope of "bodily injury" coverage.  Even if Talley's legal analysis were an appropriate subject of an expert report, the Court would find it unpersuasive.  Talley is not a lawyer, and Anthem is not a controlling statement of the law on this narrow issue, despite Harrisburg's repeated assertions to the contrary. Given Talley's unwarranted representations regarding the Anthem holding and its application to this action, the Court finds it appropriate to comment briefly upon Talley's legal analysis.

In Anthem, the Pennsylvania Superior Court reviewed an order granting summary judgment in favor of a plaintiff who had asserted a claim for negligent infliction of emotional distress against an insurer after witnessing her husband being fatally struck by an automobile.  According to the Superior Court, the appellant-insurer raised only one question on appeal: "Is the wife's claim for negligent infliction of emotional distress arising out of the same motor vehicle accident in which her husband was killed subject to the same 'per person' liability as the claim which she presented to the other driver's liability insurer as administratrix of her husband's estate?"  729 A.2d at 1228.  The court rejected the insurer's specific contention that the insured could "recover for her claim of emotional distress only if

7

her emotional distress constitutes bodily injury that is separate and distinct from the bodily injuries sustained by her husband." Id.  To support its argument, Anthem attempted to analogize plaintiff's claims of emotional injury to a claim of loss of consortium, which Pennsylvania law treats as a derivative claim.  Id.  The Superior Court rejected this argument, basing its conclusion on Pennsylvania case law that allows a plaintiff to recover on a claim for emotional distress if the infliction of emotional distress was reasonably foreseeable.  Id.  Thus, in rejecting Anthem's argument, the Superior Court was merely amplifying the rule that "a claim for negligent infliction of emotional distress does not arise from the injuries sustained by the victim, but rather it arises from the witnessing of the accident."  Id. (citing Sinn v. Burd, 404 A.2d 672, 678-79 (Pa. 1979)).  In resolving the appeal, the Superior Court did not even reach Anthem's argument that the plaintiff's claim for emotional distress was not a separate bodily injury covered by the insured's policy: "Because we have determined that Fay's claim is a separate claim, not derived from her husband's underlying bodily injury, we need not reach the merits of this issue."  Id. at 1229.  Nothing in the brief Anthem opinion specifically provides that claims for emotional injury are automatically subject to "bodily injury" insurance coverage, and in fact the Superior Court did not discuss in any way the specific provisions of the Anthem policy in issue.

In contrast, in Kline v. The Kemper Group, 826 F. Supp. 123 (M.D. Pa. 1993), Judge McClure of this Court concluded that Pennsylvania courts "have soundly rejected the contention that policy definitions of injury or bodily injury encompass mental or emotional harm." Id. at 129 (citing Jackson v. Travelers Ins. Co., 606 A.2d 1384 (Pa. Super. Ct. 1992)).  In its defense of Talley's analysis, Harrisburg attempts to discredit Kline by claiming that "Kline and Jackson obviously **pre-date** Anthem."  (Doc. No. 239, at 12) (original emphasis).  Harrisburg also argues that Judge McClure

8

relied upon faulty reasoning in reaching his conclusion regarding Pennsylvania law.

Notwithstanding Harrisburg's arguments, in a decision rendered more than three years after Anthem, the Pennsylvania Superior Court approved of Judge McClure's reasoning, stating that "[t]he federal district court for the middle district of Pennsylvania accurately interpreted Pennsylvania law when it ruled that 'the emotional distress or humiliation of having [one's] employment terminated [does not] constitute 'bodily injury.'" The Philadelphia Contributionship Ins. Co. v. Shapiro, 798 A.2d 781, 787 (Pa. Super. Ct. 2002).  In Shapiro, the relevant insurance policy defined "bodily injury" as "bodily harm, sickness, or disease, including required care, loss of services and death that results." Id.  The Superior Court noted that the plaintiff had claimed he suffered "compensatory and punitive damages . . . including but not limited to damages for mental anguish and humiliation." Id.  The Court held that plaintiff's claims were not covered under the "bodily injury" provisions of the insurance policy: "[Plaintiff] made no allegation that he suffered any 'bodily harm' as a result of being fired.  <u>Instead the damages he claimed were all emotional damages and are not covered by the policy</u>." Id. (emphasis added).  In contrast to Anthem, Shapiro clearly provides that claims for emotional injury alone are not subject to "bodily injury" coverage under Pennsylvania law.  For all of these reasons, the Court not only finds that the Talley Report impermissibly offers legal conclusions, but also finds that the ultimate conclusion Talley reaches regarding Anthem is inaccurate.

In sum, the Court finds it inappropriate for Harrisburg to pass off this expert report as the objective analysis of purely factual issues concerning commercial liability policies when the heart of the report is awash in legal conclusions regarding the proper method of interpreting insurance contracts – and is filled with legal argument regarding the state of the law in Pennsylvania that bears a striking

resemblance to the very arguments made by Harrisburg in its briefs filed in this case.

Even were the Court to find Talley's report to be legally appropriate, the Court would not find it helpful in resolving the insurance dispute presented in this action. The issues before the Court regarding the CNA and USF&G policies can be reduced to a straightforward question: do the allegations set forth within the four corners of the Crawford complaint come within the scope of coverages provided under the commercial liability policies at issue? This question is not unlike that presented in numerous insurance disputes that come before the Court in the ordinary course of the Court's business. The parties have filed extensive briefs on the issue before the Court, and have provided the Court with numerous citations to case law germane to the policy provisions in dispute. The Court does not require the assistance of Mr. Talley or any other expert report to resolve the issue presented in this action.

Finally, the Court disagrees with Harrisburg's argument that it is automatically entitled to offer the expert testimony of Douglas Talley as a response to the declaration of Paul Ruane, CNA's claims adjuster. Harrisburg asserts that "[w]here a party offers expert opinion testimony on a particular issue, that party cannot then object to the opposing party using an expert for substantially the same purposes. . . . Here **it was CNA** that proffered the Declaration of Paul Ruane as lay and/or expert opinion that only 'personal injury' coverage purchased by additional endorsement for 'false arrest, detention or imprisonment, or malicious prosecution' covered the Crawford lawsuit." (Doc. No. 239, at 12) (original emphasis.) Harrisburg thus appears to consider Talley's report to be an appropriate rejoinder to Mr. Ruane's coverage analysis. The city argues that: "CNA cannot have it both ways. It cannot offer evidence on its own opinion, albeit a lay opinion, and then seek to strike the portion of Mr.

Talley's expert report that rebuts this discrete analysis." (Id., at 13.)

Harrisburg's argument that Paul Ruane's declaration should operate to estop CNA from complaining about Harrisburg's submission of expert testimony ignores the fact that the declaration of Paul Ruane is not an expert report. Mr. Ruane's declaration was issued in his capacity as CNA's claims director, which requires him to make decisions as to whether various claims filed against the insurer are entitled to coverage under the terms and conditions of the relevant policies. The mere fact that a claims director issues a declaration explaining the basis for denying an insured's claim to coverage does not automatically entitle the insured to submit an expert report in response. Harrisburg does not offer any legal support for this argument, and the Court finds it to be without merit.

### III. Conclusion

For the foregoing reasons, the expert report of Douglas Talley offered by Harrisburg will be stricken. The report is replete with impermissible legal conclusions that are inappropriate in an expert report. Moreover, the Court does not find the proffered report to be helpful in resolving the questions before the Court regarding coverage. For the foregoing reasons, CNA's and St. Paul's motions to strike the Talley Report will be granted.

**IV.    Order**

And now, this 8th day of November 2005, for the reasons set forth in the within memorandum, **IT IS HEREBY ORDERED THAT:**

1. St. Paul Fire & Marine Insurance Company's Motion to Strike the Expert Report of Douglas Talley (Doc. No. 232) is **GRANTED**; and

2. CNA Financial Corporation, t/a CNA Insurance's Motion to Strike the Expert Report of Douglas Talley (Doc. No. 236) is **GRANTED**.

3. St. Paul's Motion for Enlargement of Time to File an Expert Report (Doc. No. 233) is **DENIED** as **MOOT**.

4. CNA's Motion for Enlargement of Time to File an Expert Report (Doc. No. 235) is **DENIED** as **MOOT**.

S/ Yvette Kane
Yvette Kane
United States District Judge