## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **COREGIS INSURANCE COMPANY,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | **Civil Action No. 1:03-CV-920** |
| **CITY OF HARRISBURG, <u>et al.</u>,** | : | |
| | : | |
| **Defendants and Third-Party** | : | (Judge Kane) |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ST. PAUL FIRE AND MARINE** | : | |
| **INSURANCE COMPANY, <u>et al.</u>,** | : | |
| | : | |
| **Third-Party Defendants** | : | |

## <u>MEMORANDUM AND ORDER</u>

Pending before the Court are cross motions for summary judgment filed by Third-Party

Defendant CNA Financial Corporation ("CNA")[1] and the City of Harrisburg.  (Doc. Nos. 179 and

248.)  By its motion, CNA seeks entry of an order declaring that CNA is under no duty to defend or

indemnify Harrisburg under a claims-made law enforcement liability insurance policy in effect from

January 28, 1998 to January 28, 1999 with respect to the underlying civil rights action of <u>Steven D.</u>

---

[1]      CNA has asserted that the proper third-party defendant in this action is Columbia
Casualty Company, because that entity issued the disputed 1998 insurance policy under which
Harrisburg seeks coverage, and because CNA Financial Corporation does not issue insurance policies.
For purposes of consistency, and because the parties refer to the third-party defendant as "CNA," the
Court will refer to CNA and Columbia Casualty Company collectively as "CNA" throughout this
memorandum.

Crawford v. Commonwealth of Pennsylvania, et al., Civil Action No. 1:CV-03-693 ("Crawford").[2]

Additionally, CNA seeks entry of summary judgment on Harrisburg's claims that CNA is obligated to

insure the city pursuant to certain insurance policies allegedly issued between 1972 to 1976, which

Harrisburg contends provided coverage for civil rights violations.  Neither Harrisburg nor CNA has

located the insurance policies issued to Harrisburg during these years, and CNA notes that the insurer

has no record of issuing Harrisburg insurance policies during those years that would have provided

coverage for the claims made in the Crawford action.  CNA argues that Harrisburg has failed to sustain

its burden of proving through and convincing evidence that it is entitled to coverage under the lost

policies.  In contrast, Harrisburg contends that it has adduced sufficient evidence that it is entitled to

coverage under the missing policies and that summary judgment should be entered in its favor.  The

motions have been fully briefed and are ripe for disposition.  For the reasons that follow, CNA's motion

for summary judgment will be granted and Harrisburg's motion for summary judgment will be denied.

I.      **BACKGROUND**

        On June 2, 2003, Coregis Insurance Company commenced the instant action by filing a

complaint seeking a declaratory judgment that certain insurance policies issued to Harrisburg and

Dauphin County do not provide coverage for the underlying Crawford litigation.  Harrisburg and

Dauphin County each answered Coregis's complaint on August 4, 2003.  Thereafter, on August 14,

---

        [2]     Steven D. Crawford commenced the underlying civil rights action following his 2003
release from prison after having been incarcerated for 28 years for the murder of John Eddie Mitchell.
Crawford was released after his attorney discovered certain potentially exculpatory evidence that
allegedly had been suppressed by law enforcement officers involved in Crawford's prosecution and
trial.  Crawford also alleges that these officers altered evidence and testified falsely during each of
Crawford's three trials held in 1974, 1977, and 1978.

2003, Harrisburg filed a third-party complaint against a number of insurance companies that allegedly

issued policies to the city between 1972 and 2003, including CNA.  All of the insurance companies

denied that Harrisburg was entitled to coverage under the respective policies.  By the third-party

complaint, Harrisburg seeks, <u>inter</u> <u>alia</u>, entry of an order declaring that the third-party defendants are

under a duty to defend Harrisburg and its additional insureds under each of the subject insurance

policies.  On December 3, 2004, CNA filed its motion for summary judgment seeking entry of an order

declaring it has no duty to indemnify Harrisburg under the 1998 claims-made policy, nor under any

policy allegedly issued between 1972 and 1976.  On August 19, 2005 Harrisburg moved for summary

judgment on its claims that CNA is contractually obligated to defend and, if necessary, indemnify the

city in connection with the <u>Crawford</u> action under the missing policies.


## II.     <u>STANDARD OF REVIEW</u>

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56.

A factual dispute is material if it might affect the outcome of the suit under the applicable law.  <u>Anderson</u>

<u>v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A factual dispute is genuine only if there is a

sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the non-

moving party.  <u>Id.</u> at 249.  The nonmoving party receives the benefit of all reasonable inferences.

<u>Sempier v. Johnson & Higgins</u>, 45 F.3d 724, 727 (3d Cir. 1995).

Once the moving party has shown that there is an absence of evidence to support the claims of

the non-moving party, the non-moving party may not simply sit back and rest on the allegations in the complaint. Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." Id. at 322.

## III.    DISCUSSION

### A.    The 1998 Claims-Made Policy

CNA issued Harrisburg a claims-made law enforcement liability policy, with a policy number of LEC 185873504, effective from January 28, 1998 to January 28, 1999. The policy's declaration page provided as follows:

> Your insurance is written on a claims made basis. It provides coverage for claims made against you occurring and reported during the policy period shown on this declaration sheet. We agree, in return for payment of the premium by you, to provide you with insurance, subject to the terms and conditions herein stated.

(Doc. No. 181 ¶ 10.) In addition to stating a policy period of January 28, 1998 to January 28, 1999, the policy expressly limited coverage to injuries resulting from wrongful acts which occured on or after January 28, 1987. (Id. ¶ 12.) The policy provided for one automatic extended reporting period of sixty days. Although Harrisburg was given the option of purchasing additional reporting periods, the city did not do so. (Id. ¶ 15.) Accordingly, in order to be eligible for coverage under policy LEC-185873504, Harrisburg was required to report any claims to CNA by March 29, 1999, or sixty days

after the policy period expired on January 28, 1999.

It is undisputed that Harrisburg first notified CNA regarding Crawford's claims in May 2003, more than four years after the deadline prescribed under the policy.  (Id. ¶ 18.)  In its response to CNA's statement of undisputed facts, Harrisburg states that it "is required at this juncture to concede without prejudice that the law of the case precludes coverage under the 1998 CNA policy."  (Doc. No. 186, at 2.)  In this concession, Harrisburg specifically references a memorandum and order the Court entered on December 7, 2004 (Doc. No. 182) granting judgment in favor of another third-party defendant that had issued Harrisburg certain occurrence-based insurance policies that were later converted to claims-made policies.  Because it was undisputed that Harrisburg had not made any claims under the relevant policies within the applicable policy periods, the Court concluded that the insurer had no contractual duty to defend or indemnify Harrisburg in connection with the Crawford litigation.

If anything, it is even more evident that CNA has no obligation to defend Harrisburg under an insurance policy that was at all times in effect on a claims-made basis, and where Harrisburg undeniably did not make a claim under the policy until more than four years after the reporting period expired. Although Harrisburg purports to be conceding this issue "without prejudice" in order to preserve its rights on appeal, the Court cannot fathom what arguments Harrisburg could martial that CNA should somehow be required to defend the city under a policy that expressly required claims to be made not later than March 28, 1999, where it is undeniable that Harrisburg made no claims relating to the

Crawford litigation until May 2003.  There is no basis to dismiss this claim without prejudice.[3]  CNA is entitled to summary judgment on its claim that it has no contractual obligation to defend or indemnify Harrisburg in connection with the Crawford litigation under the 1998 claims-made policy issued to the city.

### B.    The Missing 1972-1976 Insurance Policies

Harrisburg has alleged that CNA is contractually obligated to provide the city with a defense and, if necessary, indemnification under certain missing insurance policies that the insurer issued the city between 1972 and 1976.[4]  Unlike other policies that the Court has considered in connection with this case, the very absence of the missing policies has made it difficult to analyze meaningfully whether such policies' terms and conditions would obligate CNA to defend Harrisburg in the Crawford litigation.

### 1.    Burden of Proof

Under Pennsylvania law a party may prove the existence of a missing contract or other instrument through the use of extrinsic evidence.  However, the party seeking to enforce or recover under a missing instrument bears the burden of proving the existence and terms of an allegedly missing contract by clear and convincing evidence.  See Compass Tech., Inc. v. Tseng Laboratories, Inc., 71 F.3d 1125, 1133 (3d Cir. 1995).  For example, in Hacker v. Price, 71 A.2d 851, 853 (Pa. Super. Ct.

---

[3]    The Court has difficulty understanding how Harrisburg could reasonably have believed it was appropriate to assert a claim under the claims-made policy where Harrisburg admittedly had not notified CNA of a claim until more than four years after the claims-made period had expired.

[4]    In its opposition to CNA's motion for summary judgment, Harrisburg appears to be claiming for the first time that it is also entitled to coverage under policies issued between 1976 and 1978.  As before, Harrisburg is unable to produce any CNA insurance policy issued to the city between these years.

1950), the plaintiff claimed that a written agreement provided him the right to purchase certain shares of

stock.  Although the original agreement was lost, the plaintiff was permitted to introduce secondary

evidence in order to show the content of the agreement, and he was ultimately unsuccessful in sustaining

his burden of proof.  In an order affirming the lower court's decision, the Superior Court explained the

requirements for recovering on a lost instrument under Pennsylvania law:

> To recover on an instrument, the original of which has been
> lost, the burden of proving the loss of the original and that
> a diligent, bona fide and thorough search was made without
> success is upon the one offering secondary evidence.  He is
> also required to prove its former existence, execution,
> delivery and contents.  The evidence to sustain these
> averments must be clear and convincing.  Whether the party
> offering secondary evidence has met this burden of proof
> successfully is a matter to be determined by the trial Court
> and rests largely in the Court's discretion which will not be
> disturbed on appeal unless there is manifest abuse thereof.

Id.  The Third Circuit has noted that Hacker's enunciation of the clear and convincing evidentiary

requirement in the case of a party seeking to recover on a lost contract or other legal instrument

"echoes established Pennsylvania doctrine."  Compass Tech., 71 F.3d at 1133 (citing Mahoney v.

Collman, 293 Pa. 478, 482, 143 A. 186, 187 (1928) and In re Greggerson's Estate, 344 Pa. 498,

500-01, 25 A.2d 711, 713 (1942)).[5]

---

[5]     In Mahoney v. Collman, the Pennsylvania Supreme Court imposed what it described as
a "very heavy burden" on the party seeking to rely on a lost instrument, and announced the "clear and
convincing" evidentiary standard that must be met by a party seeking to prove the existence and terms
of a lost instrument.  143 A. at 187.  See also Compass Tech., 71 F.3d at 1133 (noting Mahoney's
establishment of the clear and convincing standard in Pennsylvania).  Notably, Compass Technology
differed from the typical case in which a plaintiff asserts a claim under a lost or missing instrument.
Compass Technology involved a claim by defendant that a lost addendum to a marketing agreement
contained terms that would establish an ambiguity in the underlying contract between the parties.

In the face of these decisions, Harrisburg argues that parties should be required under Pennsylvania law only to prove the existence of a missing insurance contract by a preponderance of the evidence.  In making this assertion, Harrisburg relies exclusively on state and federal decisions emanating from Michigan, New Jersey, and Delaware, none of which address Pennsylvania law in any respect.  Indeed, Harrisburg concedes that at least one district court in New Jersey found that under Pennsylvania law, the clear and convincing evidentiary standard applied in cases of missing commercial insurance policies.  Harrisburg attempts to discredit this decision by arguing that the court erroneously relied, in part, upon a 1942 Pennsylvania case that employed the clear and convincing evidentiary standard to a plaintiff's burden of proof on a claim brought under a missing promissory note.  The Court finds Harrisburg's argument unavailing, and concludes that the settled law of Pennsylvania requires that a party asserting a claim under a lost contract or other legal instrument must carry its burden of proving the existence and terms of such instrument by clear and convincing evidence.  The Court can perceive no legitimate basis to carve out a new, reduced standard of proof exclusively in the context of lost commercial insurance policies.

> ### 2. Harrisburg has failed to demonstrate that the missing CNA policies provided coverage for personal injury.

In its Third-Party Complaint, and again in responses to interrogatories, Harrisburg claimed

---

Apparently for this reason, and because no Court in Pennsylvania had discussed the required standard of proof in the context of a claim by a defendant that a missing document could prove the existence of an ambiguity in an underlying instrument, the Third Circuit refrained from mandating that the district court necessarily require defendant to prove the existence of the missing addendum by clear and convincing evidence.  However, nothing in the Court's opinion suggests there is any uncertainty in Pennsylvania law that the "clear and convincing" evidentiary standard applies to the more typical claim by a party seeking to assert a claim under a missing contract or other instrument.

coverage from CNA under two policies, identified as SMP 444-79-48 and CAP 943-10-61, both of which relate to the period of 1972 to 1976.  (Third-Party Compl. ¶¶ 21, 51; CNA Ex. C, Harrisburg's Resp. To CNA Interr. 6.)  For the first time, in its opposition to CNA's motion for summary judgment, Harrisburg claimed coverage under another commercial policy designated as Policy CAP 218-75-09. CNA has submitted convincing evidence demonstrating that each of these policies provided property and general liability coverage to numerous Harrisburg municipal departments, including the police department.  CNA also produced evidence demonstrating that Policies SMP 444-79-48, CAP 943-10-61, and CAP 218-75-09 did not automatically afford coverage for personal injury, but rather provided such coverage only upon payment of a separate, additional premium.  None of the limited evidence Harrisburg offered to prove the terms and conditions of the missing policies demonstrates that the policies provided personal injury coverage, and the record is devoid of persuasive evidence that Harrisburg purchased optional personal injury coverage from CNA under any policy issued between 1972 and 1978.  Accordingly, the Court finds that CNA is entitled to summary judgment on Harrisburg's claims that the policies allegedly purchased from CNA provided coverage for personal injury.

> **3.     Crawford does not allege claims of bodily injury and his claims of emotional injury do not constitute "bodily injury" under Pennsylvania law.**

Harrisburg argues in the alternative that it is entitled to summary judgment on its claims against CNA because the policies issued to the city provided coverage for "bodily injury."  Harrisburg reaches this conclusion by declaring that Crawford's claims for emotional distress fall within the definition of

"bodily injury" employed in the CNA policies.[6]  CNA concedes that the policies issued to the city

provided coverage for bodily injury, but asserts that Crawford's claims against Harrisburg do not

contain any allegation of bodily injury within the definitions employed in the policies or under settled

Pennsylvania law.

The record indicates that the definition of "bodily injury" that CNA employed in its policies

issued between 1972 and 1978 defines that term to mean "bodily injury, sickness or disease sustained

by any person."  (Doc. No. 191, at 11; Doc. No. 250 ¶ 41.)  A careful reading of the Crawford

complaint does not reveal any claims that come within this definition.  Crawford does claim that he

suffered emotional harm as a result of his prosecution and imprisonment.  (Crawford Compl. ¶ 91.)

However, as Judge McClure of this Court has previously found, "[t]he Pennsylvania courts have

soundly rejected the contention that policy definitions of injury or bodily injury encompass mental or

emotional harm."  Kline v. The Kemper Group, 826 F. Supp. 123, 129-30 (M.D. Pa. 1993) (citation

omitted).  This finding has been confirmed by the Pennsylvania Superior Court.  See Philadelphia

Contributionship Ins. Co. v. Shapiro, 798 A.2d 781, 787 (Pa. Super. Ct. 2002) (finding that Judge

---

[6]      Harrisburg has also attempted to demonstrate that Crawford has alleged bodily injury
by pointing to Crawford's deposition testimony that he suffered "numerous physical injuries, including,
inter alia, high blood pressure, loss of appetite, headaches, stomach problems, stress, contamination in
the water system, physical assaults, bruises, injuries from a fall, nightmares, hearing loss and other
physical ailments."  (Doc. No. 250 ¶ 8; Doc. No. 249, Ex. J.)  The Court rejects Harrisburg's attempt
to establish allegations of bodily injury by relying on Crawford's deposition testimony because "[t]he
insurer's obligation to defend is fixed solely by the allegations in the underlying complaint."  D'Auria v.
Zurich Ins. Co., 507 A.2d 857, 860 (Pa. Super. Ct. 1986).  Accordingly, under Pennsylvania law, an
insurer's duty to defend is triggered only by the factual averments that comprise the underlying cause of
action.  Erie Ins. Exch. v. Muff, 851 A.2d 919, 926 (Pa. Super. Ct. 2004); D'Auria, 507 A.2d at 859.
The absence of any allegation of bodily injury in the underlying complaint overrides Harrisburg's
attempt to create such claims by relying on Crawford's deposition testimony.

McClure "accurately interpret[ed] Pennsylvania law" in finding that emotional distress cannot constitute "bodily injury").  Other federal and state courts within Pennsylvania have followed this holding.  See, e.g., Arc Water Treatment Co. v. Hartford Cas. Ins. Co., 2002 WL 32392863, at *3 (E.D. Pa. March 27, 2002) ("Under Pennsylvania law, a claim for emotional distress that has not resulted in physical injury does not constitute a claim for 'bodily injury'"); Allstate Ins. Co. v. Montalbano, 2001 WL 876793, at *2-3 (E.D. Pa. May 17, 2001); Zerr v. Erie Ins. Exch., 667 A.3d 237, 239 (Pa. Super. Ct. 1995).

In spite of the foregoing cases, Harrisburg argues that claims for emotional distress, embarrassment, humiliation, and fear are "as a matter of Pennsylvania law . . . covered by bodily injury coverage even where there is no physical manifestation of injury."  (Doc. No. 282, at 4.)  In support of this assertion, Harrisburg relies exclusively on Sinn v. Burd, 404 A.2d 672, 684-85 (Pa. 1979) and Anthem Casualty Insurance Company v. Miller, 729 A.2d 1227, 1228-29 (Pa. Super. Ct. 1999). However, neither of these cases stands for the proposition that claims of emotional distress are automatically subject to bodily injury coverage.

Sinn holds only that a plaintiff can maintain a cause of action for mental distress or emotional injury  where such injury is reasonably foreseeable, even where the plaintiff was outside the zone of danger and even where the plaintiff did not also suffer physical injury.  Sinn, 404 A.2d at 684-85.  Sinn in no way addresses whether an insured is entitled to "bodily injury" insurance coverage where the underlying action alleges only emotional injury.

In Anthem, the Pennsylvania Superior Court reviewed an order granting summary judgment in favor of a plaintiff who had asserted a claim for negligent infliction of emotional distress against an

11

insurer after witnessing her husband being fatally struck by an automobile.  According to the Superior Court, the appellant-insurer raised only one question on appeal: "Is the wife's claim for negligent infliction of emotional distress arising out of the same motor vehicle accident in which her husband was killed subject to the same 'per person' liability as the claim which she presented to the other driver's liability insurer as administratrix of her husband's estate?"  729 A.2d at 1228.  The court rejected the insurer's specific contention that the insured could "recover for her claim of emotional distress only if her emotional distress constitutes bodily injury that is separate and distinct from the bodily injuries sustained by her husband."  Id.  To support its argument, Anthem attempted to analogize plaintiff's claims of emotional injury to a claim for loss of consortium, which Pennsylvania law treats as a derivative claim.  Id.  The Superior Court rejected this argument, basing its conclusion on Pennsylvania case law that allows a plaintiff to recover on a claim for emotional distress if the infliction of emotional distress was reasonably foreseeable.  Id.  Thus, in rejecting Anthem's argument, the Superior Court was merely amplifying the rule that "a claim for negligent infliction of emotional distress does not arise from the injuries sustained by the victim, but rather it arises from the witnessing of the accident."  Id. (citing Sinn v. Burd, 404 A.2d 672, 678-79 (Pa. 1979)).  In resolving the appeal, the Superior Court specifically declined to reach Anthem's argument that the plaintiff's claim for emotional distress was not a separate bodily injury covered by the insured's policy: "Because we have determined that Fay's claim is a separate claim, not derived from her husband's underlying bodily injury, we need not reach the merits of this issue."  Id. at 1229.  Nothing in the brief Anthem opinion specifically provides that claims for emotional injury are automatically subject to "bodily injury" insurance coverage, and in fact the Superior Court did not discuss in any way the specific provisions of the Anthem policy in issue.

12

Accordingly, the Court cannot agree with Harrisburg that <u>Sinn</u> or <u>Anthem</u> require that CNA

provide Harrisburg with bodily injury coverage for the <u>Crawford</u> litigation on the basis that Crawford

has claimed emotional injury, because such injury does not constitute "bodily injury" under Pennsylvania

insurance law.

> **4.     Harrisburg is not entitled to coverage on the basis of Crawford's claims
> of negligence alone.**

Harrisburg's final argument appears to be that "bodily injury" insurance coverage necessarily

extends to all civil rights claims that are predicated, even in part, on claims of negligent supervision,

without regard to the specific type of injury alleged.  In support of this argument, Harrisburg has relied

on a number of cases that contain no such holding.  Moreover, the cases Harrisburg cites all involved

claims where the underlying action manifestly contained allegations of actual physical bodily injury.  For

example, in <u>Grant v. North River Insurance Company</u>, 453 F. Supp. 1361 (N.D. Ind. 1978), one of

the plaintiffs in the underlying action died following gunshot wounds, and the other plaintiffs alleged that

they were physically wounded and permanently disabled as a direct consequence of law enforcement

officers' conduct.  <u>Id.</u> at 1364.  In <u>Strouss v. Fireman's Fund Insurance Co.</u>, 2005 WL 418036 (E.D.

Pa. Feb. 22, 2005), the plaintiff in the underlying action alleged that he sustained a bullet wound and a

shattered femur resulting from defendants' conduct.  <u>Id.</u> at *1.  In <u>General Accident Insurance Co. v.</u>

<u>Allen</u>, 708 A.2d 828 (Pa. Super. Ct. 1998), the plaintiffs in the underlying action alleged that they

suffered bodily injury in connection with sexual molestation.  <u>Id.</u> at 829.  In <u>Britamco Underwriters, Inc.</u>

<u>v. Weiner</u>, 636 A.2d 649 (Pa. Super. Ct. 1994), the plaintiff in the underlying litigation claimed that he

had sustained injuries after being assaulted and physically struck in the neck by one of defendant's

employees.  Id. at 650.  All of the cases address, inter alia, whether an insurer is obligated to defend an

insured from claims of bodily injury on the basis that the insured was negligent in allowing the conduct

that was alleged to have caused actual bodily injury.  Moreover, none of these cases stands for the

proposition that an insured is entitled to coverage simply because the underlying plaintiff alleges

negligence on the part of the insured; clearly, a finding of coverage necessarily depends on the type of

injury actually alleged, and whether the insurance policy in issue provides coverage for such injury.

In contrast to these cases, the Crawford complaint is devoid of any claims of bodily injury, and

the foregoing cases are therefore inapposite to Harrisburg's claim that CNA is obligated to defend

against Crawford's allegations simply because he has claimed the city was allegedly negligent in

supervising its employees.  In the absence of a claim of bodily injury, the Court rejects Harrisburg's

argument that Crawford's allegations of negligence alone impose upon CNA an obligation to defend the

city in the underlying litigation.

## IV.   CONCLUSION

With respect to Harrisburg's claims to coverage under the 1998 claims-made policy, it is clear

that CNA is entitled to summary judgment because Harrisburg did not make a claim under the policy

within the requisite claim period.  With respect to Harrisburg's claims to coverage under the missing

policies issued between 1972 and 1978, the Court finds that Harrisburg has failed to meet its burden of

demonstrating by clear and convincing evidence that the missing CNA insurance policies issued to the

city between 1972 and 1978 provide coverage for the injuries alleged in Crawford.  First, the record

does not support Harrisburg's claim that the city obtained personal injury coverage under any of the

missing policies, and therefore CNA is under no obligation to provide Harrisburg with a defense against

Crawford's claims of personal injury.  Second, although the CNA policies provided coverage for claims of bodily injury, Crawford does not assert any claim of bodily injury within the definition applicable to the missing policies, and Crawford's claims of emotional injury are not subject to bodily injury coverage in accordance with settled Pennsylvania law.  Finally, the Court rejects Harrisburg's argument that because Crawford alleges that the city was negligent in supervising or training its employees, that allegation alone requires CNA to provide the city with a defense.  The nature of the injuries Crawford actually alleged in the underlying action is the relevant focus to determine whether CNA is obligated to defend the city, and Harrisburg has failed to demonstrate that the policies issued by CNA provided coverage for the specific injuries Crawford has claimed.  Accordingly, the Court finds that the general commercial insurance policies CNA issued to Harrisburg between 1972 and 1978 do not obligate CNA to defend Harrisburg in the underlying litigation.  For all of the foregoing reasons, CNA's motion for summary judgment must be granted and Harrisburg's cross-motion for summary judgment must be denied.  An appropriate order follows.

**V.**      <u>**ORDER**</u>

And now, this 8th  day of November 2005, for the reasons set forth in the within memorandum,

**IT IS HEREBY ORDERED THAT** CNA's motion for summary judgment (Doc. No. 179) is

**GRANTED**.  **IT IS FURTHER ORDERED THAT** Harrisburg's motion for summary judgment

(Doc. No. 248) is **DENIED**.  The Clerk of Court shall refrain from entering judgment in favor of CNA

until the conclusion of this action.


                                                        <u>     S/ Yvette Kane          </u>
                                                        Yvette Kane
                                                        United States District Judge