## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **COREGIS INSURANCE COMPANY,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | **Civil Action No. 1:03-CV-920** |
| **CITY OF HARRISBURG, <u>et</u> <u>al</u>.,** | : | |
| | : | |
| **Defendants and Third-Party** | : | **(Judge Kane)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ST. PAUL FIRE AND MARINE** | : | |
| **INSURANCE COMPANY, <u>et</u> <u>al</u>.,** | : | |
| | : | |
| **Third-Party Defendants** | : | |

## <u>MEMORANDUM</u>

Before the Court is Coregis Insurance Company's motion for summary judgment against

the City of Harrisburg and Dauphin County.  (Doc. No. 203.)  By the motion, Coregis requests

entry of an order declaring that the insurance company is not obligated to defend or indemnify

Dauphin County or Harrisburg under certain municipal package insurance policies with respect

to the underlying civil rights action of <u>Steven D. Crawford v. Commonwealth of Pennsylvania, et</u>

<u>al.</u>, Civil Action No. 1:CV-03-693 ("<u>Crawford</u>").[1]  The City of Harrisburg has also filed a cross-

motion for summary judgment, seeking entry of an order declaring that Coregis is obligated to

---

[1]     As discussed more fully below, Steven D. Crawford commenced the underlying
civil rights action following his 2003 release from prison after having been incarcerated for 28
years for the murder of John Eddie Mitchell.  Crawford was released after his attorney
discovered certain potentially exculpatory evidence that had allegedly been suppressed by law
enforcement officers involved in Crawford's prosecution and trial.  Crawford also alleges that
these officers altered evidence and testified falsely during each of Crawford's three trials held in
1974, 1977, and 1978.

provide the city with a defense in the <u>Crawford</u> litigation under each of the municipal package and umbrella policies issued to the city between 1997 and 2001.  (Doc. No. 240).  The issues have been fully briefed, and the motions are ripe for disposition.  For the reasons that follow, the Court finds that none of the insurance policies under consideration provide coverage for the claims alleged in the <u>Crawford</u> litigation.  Accordingly, Coregis's motion for summary judgment will be granted and Harrisburg's cross-motion will be denied.

## I.      Background

Coregis's motion for summary judgment is substantially similar to a number of other dispositive motions that the Court considered and granted with respect to other third-party defendants to this action. (<u>See</u> Doc. No. 193.)  In short, Coregis argues that it issued certain occurrence-based insurance policies to Harrisburg and Dauphin County having applicable policy periods between 1998 and 2001, and that none of the policies obligate Coregis to provide Harrisburg or Dauphin County with defense or indemnity in connection with the <u>Crawford</u> litigation.  As has been persuasively argued by several other third-party defendant-insurers, the <u>Crawford</u> complaint alleges tortious conduct and resultant injury dating to the 1970s, when Crawford was prosecuted on three separate occasions for the murder of John Eddie Mitchell. The Court has previously found that none of the allegations in the <u>Crawford</u> complaint can conceivably be read to assert that Crawford sustained  injury at any time after 1978, and the Court's findings and legal reasoning have been set forth in detail in a prior Order.  (<u>See</u> Doc. No. 193.)  The Court found that none of the allegations triggered coverage under the occurrence policies that were effective years after the allegedly tortious conduct first occurred or the resulting injuries first became manifest, and accordingly granted summary judgment in favor of a

number of third-party insurers who had issued occurrence-based policies to Harrisburg and/or

Dauphin County providing insurance for certain periods after 1978.  The Court's finding in this

regard is unchanged with respect to the policies presently under consideration, and like the other

third-party Defendants whose trigger motions were granted in the Court's March 31, 2005 Order,

Coregis is entitled to summary judgment.

## II.     The Insurance Polices

### A.      The Coregis-Dauphin County Policies

Coregis issued several Municipal Package Policies to Dauphin County that were effective

during specified periods from May 1, 1999 until June 15, 2003 (the "Coregis-Dauphin Policies")

(Doc. No. 1, Exs. B, C, D and E.)  The Coregis-Dauphin Policies contain the following terms

and conditions:

> **Insuring Agreement - General Liability**[2]
>
> a.      We will pay those sums that the insured becomes legally obligated
> to pay as "damages" because of "bodily injury" or "property damage"
> caused by an "occurrence;" or "personal injury" or "advertising
> injury" caused by an offense as more fully described in the
> definitions of "personal injury" and "advertising injury."  We will
> have the right and duty to defend the insured against any "suit"
> seeking such "damages."  However, we will have no duty to defend
> the insured against any "suit" seeking "damages" because of "bodily
> injury," "property damage," "personal injury" or "advertising
> injury" to which this insurance does not apply.
>
>                              * * *
>
> c.      This insurance applies to "bodily injury," "property damage,"
> "personal injury" or "advertising injury" only if:

---

[2]      The terms and conditions set forth under "General Liability" are substantially the same as the terms and conditions set forth under the "Law Enforcement Liability" provisions of the policies, which are also applicable to this action.

(1)     The "bodily injury," . . . [or] "personal injury" is caused by an "occurrence" or offense that takes place in the "coverage territory;" and

(2)     <u>The "bodily injury," . . . [or] "personal injury" . . . occurs during the policy period.</u>

(<u>Id.</u>) (emphasis added)  The Coregis-Dauphin Policies also contain the following definitions:

10.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same harmful conditions.

11.     "Personal Injury" means injury, other than "bodily injury," arising out of one of more of the following offenses:

a.      False arrest, detention or imprisonment;

b.      Malicious prosecution;

* * *

f.      False or improper service of process;
g.      Discrimination on sex, age, race, ethnic background, national origin, sexual preference, handicap or disability;
h.      Mental anguish, mental injury and humiliation;
i.      Deprivation of rights, privileges, or immunities secured by the United States Constitution.

(<u>Id.</u>)

## B.     The Coregis-Harrisburg Policies

Coregis issued Municipal Package Policies to Harrisburg which were effective during specified periods between July 1, 1997 and July 1, 2001.  (Doc. No. 1, Exs. F, G, H, and I.) Coregis issued a Municipalities Package insurance policy, No. 651-006592, to Harrisburg for the period July 1, 1997 to July 1, 1998.  (Doc. No. 205, Ex. D.)  The 1997 Harrisburg Policy excluded coverage for liability arising from law enforcement activities.  (<u>Id.</u>)  The 1997 Harrisburg Policy was renewed for the policy period from July 1, 1998 to July 1, 1999, bearing policy number 6510006596.  (Doc. No. 205, Ex. E.)  In January 1999, Harrisburg purchased

endorsements from Coregis, one being a "Law Enforcement Prior Acts Endorsement" extending

coverage for occurrences or offenses under certain circumstances dating back to  July 1, 1987,

and the other a Law Enforcement Liability Coverage Form for the 1998 Harrisburg Policy.  In

addition, Coregis issued Harrisburg umbrella insurance policies for periods in 1999, 2000, and

2001.  The scope of coverage and applicable definitions and limitations are substantially similar

to those contained in municipal package policies issued to Dauphin County and relevant portions

are set forth briefly below.

The 1998 policy, as modified by the prior acts endorsement issued in January 1999,

provides, in relevant part, as follows:

> c.   This insurance applies to "bodily injury," "personal injury," "property
> damage" and only if:
>
> (1)   The "bodily injury," "property damage," or "personal injury" is
> caused by an "occurrence" that takes place in the "coverage
> territory;" and
>
> (2)   The "bodily injury," "property damage" or "personal injury"
> occurs during the policy period.

(Doc. No. 205, Ex. E, Endorsement No. 2.)

The 1999, 2000, and 2001 municipal package policies provide law enforcement coverage

subject to the following applicable restrictions:

> b.   This insurance applies to "bodily injury," "property damage" or "personal
> injury" only if:
>
> (1)   The "bodily injury," "property damage" or "personal injury" is
> caused by an "occurrence" or offense that takes place in the
> "coverage territory"; and
>
> (2)   The "bodily injury," "property damage," or "personal injury"
> occurs during the policy period.
>
> . . .

5

4.      "Coverage Territory" means that coverage applies to "occurrences" which take place during the policy period . . . ."

(Id., Exs. F, G, H, L, M, N, O.)

The Harrisburg 1999, 2000, and 2001 Umbrella Policies provide coverage for, inter alia:

a)      "Bodily Injury" or "Property Damage" occurring during the Policy Period stated in Item 2 of the Declarations ("Policy Period") and caused by an "Occurrence;"

(b)      "Personal Injury" caused by an offense committed during the Policy Period[.]

(Id., Exs. I, J, K.)

## II.      Standard of Review

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-51 (1986).  When deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, who is "entitled to every reasonable inference that can be drawn from the record."  Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000).  However, the non-moving party may not simply sit back and rest on the allegations in his complaint; instead, he must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden at trial." Id. at 322.

When the material facts are not in dispute, the determination of coverage under an insurance contract is a question of law to be decided by the Court. Pacific Indem. Co v. Linn, 766 F.2d 754, 760 (3d Cir. 1985). Under Pennsylvania law, the question of whether an insurance company has a duty to defend is determined by comparing the allegations contained within the four corners of the underlying complaint against the terms and conditions of the insurance policy at issue.[3] Id. (citing Wilson v. Md. Cas. Co., 377 Pa. 588, 105 A.2d 304 (Pa. 1954) ("The obligation to defend is determined solely by the allegations of the complaint in the action"). Under Pennsylvania law, an insurer is obligated to defend an insured "whenever an underlying complaint may 'potentially' come within the insurance coverage." Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999) (citation omitted). To determine whether this duty is triggered, the Court:

> must first look to the complaint filed against the insured. "It is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend." Springfield Township v. Indemnity Ins. Co. of North America, 361 Pa. 461, 64 A.2d 761 (1949). After discerning the facts alleged in the complaint, we then must decide whether, if those facts were found to be true, the policy would provide coverage. If it would, then there is a duty to defend.

D'Auria v. Zurich Ins. Co., 507 A.2d 857, 859 (Pa. Super. 1986) (citations omitted). Thus, "[i]f a single allegation of a complaint is potentially covered by a policy, an insurer has an obligation to defend its insured against all claims until there is no possibility of recovery for a covered

---

[3]     All parties appear to agree that Pennsylvania law governs the dispute at issue, and no party has asserted any choice of law arguments to the contrary.

7

claim." CAT Internet Sys., Inc. v. Providence Washington Ins., 153 F. Supp. 2d 755, 759 (E.D. Pa. 2001) (citing Frog, Switch, 193 F.3d at 746).

Coregis maintains that the polices issued to the Harrisburg and Dauphin County that are the subject of the motion before the Court are "occurrence" policies in which Coregis agreed to insure Harrisburg and Dauphin County against certain liability arising from conduct and injury occurring within the relevant policy periods. Referencing this Court's prior Order, Coregis submits that the allegations set forth in the Crawford complaint concern acts and injuries that first occurred and were manifest in the 1970s, and thus prior to any of periods covered by any of the insurance policies at issue. Accordingly, because Crawford's alleged injuries were caused by offenses or wrongful acts allegedly occurring long before the period of coverage under any of the insurance policies at issue, Coregis asserts that it is not obligated to provide coverage to Harrisburg or Dauphin County in the underlying Crawford litigation.

In response, the municipalities argue variously that the Crawford complaint alleges injury that occurred during all of the relevant policy periods under the terms of the policies; that the Crawford complaint alleges continuous injury so as to have occurred during every year between 1972 and 2003; and that the policies are in many instances ambiguous regarding whether they are occurrence-based policies and should, therefore, be construed against the insurers. Additionally, Harrisburg attempts to distinguish the policies as "wrongful act" policies in contrast to occurrence-based policies, and asserts that the underlying complaint alleges wrongful acts that occurred during each of the applicable policy periods. Harrisburg concludes that the allegations in the Crawford complaint trigger a duty by Coregis to provide the city with coverage. The Court has previously considered – and rejected – virtually identical arguments.

The policies before the Court are clearly "occurrence" policies.   An occurrence policy "protects the policy holder from liability for any act done while the policy is in effect, whereas a 'claims made' policy protects the holder only against claims made during the life of the policy." City of Erie v. Guaranty Nat'l Ins. Co., 109 F.3d 156, 158-59 (3d Cir. 1997) (quoting St. Paul Fire & Marine Ins. Co. v. Barry, 438 U.S. 531, 535 n.3 (1978).  A review of the relevant language of each of the policies set forth above confirms that the subject policies are occurrence policies.

Harrisburg argues that the language of the policies is ambiguous on this point, and urges the Court to construe these alleged ambiguities against the insurers.  See, e.g., United Services Automobile Ass'n v. Elitzky, 517 A.2d 982, 986 (Pa. Super. Ct. 1986), alloc. denied, 528 A.2d 957 (Pa. 1987).  Under Pennsylvania law, when a court interprets an insurance policy:  (1) the terms of the insurance policy must be given their ordinary meaning; (2) a term is ambiguous only if reasonably intelligent people considering the term in the context of the entire policy would honestly differ as to its meaning; and (3) the parties' intent must be determined not only from the language but from all of the circumstances.  Medical Protective Co. v. Watkins, 198 F.3d 100, 103-04 (3d Cir. 1999).  Any ambiguities are to be resolved in favor of the insured, however, a "court should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them."  Northbrook Ins. Co. v. Kuljian Corp., 690 F.2d 368, 372 (3d Cir. 1982).  If unambiguous, the clear terms of the insurance policy as written should be construed according to their plain and ordinary meaning and given full effect.  Id.; Hartford Mut. Ins. Co. v. Moorhead, 578 A.2d 492, 495 (Pa. Super. Ct. 1990).

The insureds' various arguments as to how the policies are ambiguous are unpersuasive,

and are often predicated upon a tortured analysis of discrete aspects of the policies' relevant terms and conditions.  The Court concludes that each of the policies before the Court unambiguously constitute occurrence-based insurance policies pursuant to the clear language of the respective policies as discussed above.

Having determined that each of the policies issued by Coregis that are the subject of the motions constitute "occurrence" policies, the Court must next determine whether the allegations in the Crawford complaint contain allegations of occurrences or other covered acts that took place within the policy periods.  The Court has previously engaged in precisely this analysis, and concluded that none of the allegedly tortious conduct or injuries took place after 1978.  The Court's finding in this regard is unchanged.  However, in the interest of providing a complete record, the Court's analysis is set forth again below.

A.      The Underlying Crawford Action.

On March 28, 2003, Crawford commenced the underlying action by filing a complaint against Harrisburg, Dauphin County, and other individual defendants for alleged violations of 42 U.S.C. §§ 1983, 1985 and 1986, fraud, false imprisonment, conspiracy, and intentional infliction of emotional distress relating to his arrest, conviction and imprisonment for murder.[4]  Crawford commenced the underlying lawsuit after exculpatory evidence compelled his release from prison in 2003.  The factual allegations set forth in the Crawford complaint are discussed below.

On February 14, 1974, Crawford was arrested and charged with the 1970 murder of  John

---

[4]      The Court subsequently dismissed, inter alia, Crawford's state law claims and his claims for punitive damages brought in Counts III through VI of the underlying complaint against Harrisburg and Dauphin County.  (Crawford Doc. No. 38.)  The only claims remaining against Harrisburg and Dauphin County are alleged constitutional deprivations under 42 U.S.C. §§ 1983, 1985, and 1986 (Counts I and II).  (Id.)

Eddie Mitchell.  (<u>Crawford</u> Compl. ¶ 9.)  Crawford was tried and found guilty on September 18, 1974.  (<u>Id.</u> ¶ 19.)  On October 8, 1976, the Supreme Court of Pennsylvania ordered a new trial. (<u>Id.</u> ¶ 20.)  On February 24, 1977, Crawford was again tried and found guilty a second time.  (<u>Id.</u> 21.)  The trial judge subsequently declared a mistrial and overturned Crawford's conviction.  (<u>Id.</u> ¶ 22.)  Following a third trial for Mitchell's murder, Crawford was again found guilty on February 17, 1978.  (<u>Id.</u> ¶ 24.)  On May 14, 1982, Crawford was sentenced to a term of life imprisonment.  (<u>Id.</u> ¶ 25.)

Following his sentencing, Crawford engaged in a series of unsuccessful attempts in state and federal court to obtain post-conviction relief, including appeals of his conviction, petitions under the Post Conviction Relief Act, and requests for habeas relief.  (<u>Id.</u> ¶¶ 26-34, 49, 71-75.) Subsequently, on September 29, 2000, Crawford filed another habeas petition, which was amended on November 29, 2000.  (<u>Id.</u> ¶ 34.)  By order dated March 13, 2001, the Office of the Federal Public Defender was appointed to represent Crawford in connection with this petition. (<u>Id.</u> ¶ 49.)  Following this appointment, Crawford's counsel and the Dauphin County District Attorney engaged in a process of voluntary discovery.  (<u>Id.</u> ¶ 50.)  Following the fortuitous discovery of exculpatory evidence, the District Attorney filed an application for permission to enter a nolle prosequi on or about July 16, 2002, and Crawford was released from prison.  (<u>Id.</u> ¶¶ 77, 79.)  Thereafter, on March 28, 2003, Crawford commenced the underlying action.

The heart of Crawford's complaint focuses on the alleged actions of three law enforcement officers involved in Crawford's prosecution and conviction for Mitchell's murder. Crawford alleges that he was convicted as a result of falsified laboratory notes and the issuance of a report based upon such notes, false testimony offered at trial based upon the altered notes

and report, and the suppression of the original lab notes.  (Id. ¶¶ 36-48, 55-66, 76, 78, 84-86, 88, 94-95, 97, 102-103, 111-112, 117.)

Crawford alleges that in 1972, Janice Roadcap, a chemist with the Pennsylvania State Police, conducted an experiment on a palm print lifted from Crawford's father's automobile to determine whether certain foreign material found in the palm print was human blood.  (Id. ¶ 40.) Roadcap viewed the results of this experiment with Sergeant Walton B. Simpson and Corporal John Balshy.[5]  (Id.)  Roadcap and Balshy each signed the lab notes, and all three law enforcement officials observed the testing.  (Id. ¶¶ 40, 42-43.)

Roadcap's notes taken during this time indicate that the experiment disclosed the presence of blood along the ridges of the recovered fingerprint, as well as in the valleys of the palmprint.  (Id. ¶ 41.)  This evidence would have supported an argument advanced by Crawford during his criminal trials that his print was already on his father's car at the time it came into contact with Mitchell's blood.  (Id. ¶ 56.)  Notwithstanding the result of the experiment, Crawford alleges that the law enforcement officials altered the original lab notes by deleting any reference to blood being found in the valleys of the palm print.  (Id. ¶ 44.)  This deletion was allegedly intentionally executed "to materially alter the record and conceal information which was exculpatory to Mr. Crawford."  (Id. ¶ 45.)  On November 30, 1972, Roadcap prepared a report containing the following statement: "[The test results] indicates the presence of blood deposited by the donor of the palmprint."  (Id. ¶ 46.)  By this statement, Roadcap stated clearly

---

[5]     Crawford alleges that Balshy was a Corporal with the Pennsylvania State Police. Crawford further alleges that the late Walton D. Simpson was, at all times relevant to the underlying complaint, either a Sergeant with the Harrisburg Police Department or a Detective with Dauphin County.  (Crawford Compl. ¶¶ 6, 7.)

that the blood was located on Crawford's hand before he touched his father's automobile, contradicting the results reported in Roadcap's lab notes.  (Id.)  Accordingly, Crawford alleges that the testimony Roadcap, Simpson, and Balshy gave in connection with his criminal trials was "patently false and known by them to be false."  (Id. ¶ 47.)  Crawford alleges that these law enforcement officers gave false testimony at each of his trials in 1974, 1977, and 1978.  (Id. ¶¶ 17, 36-40, 47, 58, 78, 86, 95, 103, 112.)  Moreover, Crawford alleges that these law enforcement officers, and others, suppressed the original notes from Crawford's defense counsel at those trials.  (Id. ¶¶ 48, 57-65, 84, 88, 94, 97, 102, 117.)

In the Complaint, Crawford alleges constitutional violations caused by the alleged falsification of Roadcap's original lab notes and the issuance of a report based upon such altered notes, false testimony based on the altered notes and report, and the concealment of the original lab notes, all of which allegedly resulted in Crawford's convictions and imprisonment for 28 years.  (Id. ¶¶ 84, 86.)  Crawford further alleges that law enforcement officials "offered knowingly false testimony at [Crawford's] three trials" with the "specific intent of wrongfully convicting" him.  (Id. ¶ 86.)  Moreover, Crawford alleges that this "fraudulent and deceitful conduct" is part of "a persistent and troubling pattern of manipulating and falsifying evidence that exists and is condoned with the law enforcement units" of Harrisburg, as well as those of the Commonwealth and Dauphin County.  (Id. ¶ 87.)  Finally, Crawford alleges that Harrisburg and other defendants failed to train their employees sufficiently and lacked adequate safeguards to prevent their agents from altering evidence, concealing exculpatory evidence, and testifying falsely; lacked sufficient supervision, and fostered an environment that encouraged employees to conceal evidence, alter evidence, and testify falsely.  (Id. ¶¶ 67-69.)

**B.      Under Pennsylvania Insurance Law, a Tort Occurs When the Alleged Injury First Becomes Manifest.**

Having reviewed the specific allegations contained in the <u>Crawford</u> complaint, the Court next must consider whether any of the injuries alleged in the complaint can be read to have occurred during any of the policies at issue.  Under Pennsylvania law, the question of when a tort "occurs" for insurance purposes was addressed specifically in <u>Appalachian Insurance Co. v. Liberty Mutual Insurance Co.</u>, 676 F.2d 56 (3d Cir. 1982).  In <u>Appalachian</u>, the United States Court of Appeals for the Third Circuit considered whether an insurer was obligated to provide coverage for losses involving ongoing employment discrimination where the insured's discriminatory conduct originated prior to the effective date of coverage, but continued to impact class members subsequent to the date of coverage.  <u>Id.</u> at 58.  Specifically, the employer adopted discriminatory employment practices in 1965.  <u>Id.</u>  Appalachian issued occurrence-based insurance policies to the employers that were effective between 1971 and 1974.  <u>Id.</u> at 59.  The employer demanded that Appalachian provide reimbursement for settlement payments made to remedy effects of the discrimination occurring between 1970 and 1974.  <u>Id.</u> at 58-59.  The Third Circuit found Appalachian was not under a duty to indemnify, concluding that the determination of when an occurrence takes place must be made by referring to the time when the injurious effects of the occurrence first took place:

> <u>We hold that in this type of a case the occurrence takes place when the injuries first manifest themselves</u>. . . Since the injuries to Liberty's employees occurred immediately upon the promulgation of Liberty's discriminatory employment policies the occurrence took place for purposes of coverage before August 1, 1971.  Appalachian need not indemnify Liberty because the occurrence preceded the effective date of the insurance policy.

<u>Id.</u> at 62-63 (emphasis added).

14

The effect test enunciated in Appalachian was subsequently applied in City of Erie v. Guaranty National Insurance Co., 109 F.3d 156 (3d Cir. 1997), a case that bears striking resemblance to the instant action.  Louis DiNicola was arrested and charged on March 25, 1980 with arson and three counts of second degree murder.  Id. at 158.  He was subsequently convicted of all counts.  Id.  On December 6, 1983, the Pennsylvania Supreme Court overturned DiNicola's conviction and remanded for a new trial.  Id.  More than ten years later, in May 1994, a jury acquitted DiNicola of all charges.  Id.  DiNicola sued the City of Erie for malicious prosecution, among other claims brought under 42 U.S.C. §§ 1983, 1988, and state law.  Id. at 158 and n.1.[6]  The city requested a defense and indemnification from its insurers, both of which declined coverage, asserting that their policies did not become effective until after the city arrested and charged DiNicola.  Id. at 158.  The city then brought suit seeking a declaratory judgment that the insurers were obligated to defend and indemnify the city for DiNicola's action. Id.  In support of its position that coverage was triggered, the city argued that the tort of malicious prosecution "occurs" when the claim arises, in other words, after the defendant is acquitted and capable of bringing suit for the alleged tort.  Id. at 159.  Alternatively, the city argued that the tort of malicious prosecution constitutes a continuing injury and does not "occur" on a set date.  Id. at 159, 164.  Accordingly, the city contended that the court should adopt a "multiple trigger" theory of liability under which an insurer is obligated to defend and indemnify an insured if it issued a policy in effect at any time during which the alleged tort of malicious prosecution continued.  Id.  Finally, the city argued that the insurance policies at issue were

---

[6]       Notwithstanding DiNicola's other claims, both the district court and the Third Circuit were concerned only with DiNicola's allegation of malicious prosecution.

ambiguous and should be construed against the insurers.

The Third Circuit predicted that the Pennsylvania Supreme Court would adopt the

majority rule that the tort of malicious prosecution occurs when the underlying criminal charges

are filed against a defendant.  Affirming the district court's dismissal of the city's declaratory

action, the Third Circuit observed:

> Under Pennsylvania law, the general rule is that a tort "occurs" for
> insurance coverage purposes <u>when the injuries caused by the tort
> first become apparent or manifest themselves</u>.  In the case of
> malicious prosecution, it is undisputed that the injuries caused by
> the tort first manifest themselves at the time the underlying
> criminal charges are filed.
>
> Had the City of Erie purchased an occurrence policy in effect on
> March 25, 1980, when the charges against DiNicola were filed,
> the City would be covered.  Likewise, had the City of Erie
> obtained a "claims made" insurance policy in effect on December
> 15, 1994, it would be covered.  But as we have noted, all of the
> insurance policies here were occurrence policies, and none were
> in effect at the time DiNicola's injury first manifested itself.

<u>Id.</u> at 159 (emphasis added).  The Court also addressed and rejected the city's argument that a

multiple trigger theory of liability should apply to cases of malicious prosecution:

> In malicious prosecution cases, there is no interval between arrest and
> injury that would allow an insurance company to terminate coverage.
> The plaintiff faces incarceration, humiliation and damage to reputation
> as soon as charges are filed.  Perhaps for this reason, no federal or
> state court has adopted the multiple trigger theory in malicious
> prosecution cases.

<u>Id.</u> at 165.  The Court noted that the multiple trigger theory has been adopted in very limited

circumstances, such as asbestosis, where the injuries caused by exposure do not manifest

themselves until a substantial time after the exposure causing the injury.  <u>Erie</u>, 109 F.3d at 164.

Courts have justified use of a multiple trigger theory of liability in such cases due to the long

latency period of the injuries caused by asbestosis and similar disease, and concern that insurers

facing numerous future claims would terminate coverage.  See, e.g., J.H. France Co. v. Allstate

Ins. Co., 626 A.2d 502 (Pa. 1993).  The Court held that such policy considerations were

inapplicable in Erie because "[i]n malicious prosecution cases, there is no interval between arrest

and injury that would allow an insurance company to terminate coverage."  Erie, 109 F.3d at

165.[7]

The Court also rejected the city's alternative argument that the policies at issue were

ambiguous and should be construed against the insurance companies.  Although the parties

apparently agreed that the policies were occurrence-based, the city argued that the policies failed

to define precisely when a tort occurs for purposes of insurance coverage.  The Court held that

where a term is not precisely defined by an insurance policy, but "possesses a clear legal or

common meaning that may be supplied by a court, the contract is not ambiguous."  Id. at 163.

The Court explained:

> Here, the courts of Pennsylvania have provided a clear legal definition of
> when a tort occurs for insurance coverage purposes.  Therefore, the

---

[7]     In determining when the tort of malicious prosecution occurs, the Court also
rejected the argument that the date on which the statute of limitation begins to run on malicious
prosecution claims should determine when the tort occurs for insurance coverage purposes.  Erie,
109 F.3d at 161-62.  The Court explained:
> Statutes of limitation and triggering dates for insurance purposes
> serve distinct functions and reflect different policy concerns.
> Statutes of limitation function to expedite litigation and discourage
> stale claims.  But when determining when a tort occurs for insurance
> purposes, courts have generally sought to protect the reasonable
> expectations of the parties to the insurance contract.  Because of this
> fundamental difference in purpose, courts have consistently rejected
> the idea they are bound by statutes of limitation when seeking to
> determine when a tort occurs for insurance purposes.

Id.

> meaning of the policies is not susceptible of reasonable dispute or
> differing constructions.  To alter the settled rule in Pennsylvania that a
> tort occurs when the injuries first manifest themselves would frustrate
> the reasonable expectations of the parties to these contracts.

Id. at 164.

The reasoning in Erie was subsequently applied in Consulting Engineers, Inc. v. Insurance Co. of North America, 710 A.2d 82 (Pa. Super. Ct. 1998).  In Consulting Engineers, the insured sought coverage for a claim for wrongful use of civil proceedings relating to the insured's commencement of a lawsuit against a third party in 1989.  Id. at 83.  The first of the insured's occurrence policies went into effect in 1990.  Id.  The court held that the insurance companies were not obligated to defend and indemnify the insured because the subject policies were not in effect at the time the allegedly improper proceedings were commenced.  Id. at 88.  Reasoning similar to that relied on in the foregoing cases has been applied in other contexts where the alleged injuries were first manifest before the insurance policies became effective.  See, e.g., D'Auria v. Zurich Ins. Co., 507 A.2d 857 (Pa. Super. Ct. 1986) (insurance policies not triggered where underlying malpractice complaint alleged renal injury that first manifested prior the effective period of the policy).

Applying the rule and reasoning discussed in Appalachian, Erie, and Consulting Engineers to the instant case, the Court again concludes that Coregis is not contractually obligated to provide Harrisburg or Dauphin County with a defense or indemnity in the Crawford action under the polices before the Court.  Notwithstanding that Crawford was imprisoned for 28 years, the entire thrust of the underlying complaint focuses on the alleged actions and malfeasance of law enforcement officials perpetrated before and during Crawford's three criminal trials in the 1970s that resulted in Crawford's conviction for Mitchell's murder.  It is

18

beyond dispute that none of the insurance policies at issue were in effect during any period prior to 1998, more than four years after Crawford's third and final conviction.[8]

Crawford alleges that law enforcement officials altered evidence as early as 1972, conspired to suppress such evidence, and testified falsely during his three trials, the last of which concluded with Crawford's conviction in 1978.  In accordance with <u>Erie</u> and the facts pleaded in the underlying complaint, it is clear that the humiliation, damage to reputation, and other injuries that allegedly resulted from Crawford's prosecution and the attendant constitutional deprivations would have been evident upon his arrest and incarceration in 1974.  At the very latest, the injuries Crawford alleges in the underlying cases were manifest in 1978, when Crawford was ultimately convicted of Mitchell's murder for a third and final time.  Therefore, the injuries were first manifest years prior to any of the insurance policies presently before the Court.  Under <u>Appalachian</u> and <u>Erie</u>, therefore, Coregis is not obligated to provide Harrisburg or Dauphin County coverage under any of the policies that are the subject of the instant cross-motions before the Court.

With respect to Crawford's allegations that Roadcap, Balshy, and Simpson conspired to suppress exculpatory evidence from Crawford and his defense attorneys beginning in the early 1970s, it is clear from the underlying complaint that this conspiracy is claimed to have been formed years before any of the policies at issue came into effect, and that Crawford claims injury as a result of this conspiracy during each of his three criminal trials.  Harrisburg and Dauphin

---

[8]    Although Harrisburg and Coregis entered into a prior acts endorsement with respect to the 1998 municipal package policy, Harrisburg was only entitled to certain specified coverage dating back to July 1, 1987, which was still years after the allegedly tortious conduct took place and long after Crawford's alleged injuries first became manifest.

County would have the Court interpret Crawford's concealment allegation to cause a continuous trigger between 1972 and 2002, in effect triggering coverage under every insurance policy issued to Harrisburg until the discovery of the lab notes in 2002.  The Court does not read the allegations in the underlying complaint so broadly, nor does it find that such a reading would comport with established Pennsylvania insurance law discussed in <u>Appalachian</u>, <u>Erie</u>, <u>Consulting Engineers</u>.  Court finds that the injuries allegedly incurred as a result of this conspiracy to suppress evidence were first manifest before any of the policies at issue went into effect.

That the effects of Crawford's alleged injuries that occurred in the 1970s may have <u>extended</u> into the respective policy periods does not change the Court's analysis.  Indeed, in <u>Erie</u> the alleged malicious prosecution extended into the relevant policy period, as did the employment discrimination at issue in <u>Appalachian</u>.  In both cases, the Third Circuit found that the respective insurance companies' policies were not triggered because the torts and injuries alleged had first occurred before the policy periods went into effect.  Therefore, because the injuries alleged in the <u>Crawford</u> complaint were first manifest before the periods insured under any of the policies before the Court, none of the policies was triggered by Crawford's allegations, notwithstanding that some of Crawford's injuries may have extended into certain of the policy periods at issue.  Accordingly, Coregis is under no duty to defend or indemnify Harrisburg or Dauphin County under any of the policies before the Court.

In an effort to evade the foregoing case law, Harrisburg argues that most of the insurance policies before the Court are more accurately considered as "wrongful act" policies rather than occurrence-based policies, and that the <u>Crawford</u> complaint is replete with allegations of

wrongful acts committed in each of the respective policy periods.[9]  Relying almost exclusively

on The Rector, Warden & Vestryman of St. Peter's Church v. American National Fire Insurance

Co., 2002 U.S. Dist. LEXIS 625 (E.D. Pa. Jan. 14, 2002) ("St. Peter's"), an unpublished decision

from the Eastern District of Pennsylvania, Harrisburg argues that Coregis's policies are triggered

by these purported allegations of wrongful acts, notwithstanding Crawford's allegations that he

incurred personal injury in years prior to the policy periods.[10]  To bolster this argument,

Harrisburg necessarily overstates the allegations made in Crawford.  In fact, the underlying

complaint is devoid of any specific allegations of distinct wrongful acts or offenses committed

after Crawford's third conviction for Mitchell's murder.  More importantly, the Crawford

Complaint does not allege any specific wrongful acts occurring during the respective policy

periods that allegedly caused personal injury distinct from the injuries Crawford allegedly

incurred in the 1970s.  The Court has previously rejected virtually an identical argument offered

by Harrisburg, and the Court finds no basis to alter its original conclusion.  (See Doc. No. 193.)

It is true that in the Complaint, Crawford notes that his efforts at obtaining post-trial

---

[9]  As previously noted during this action, in light of Appalachian and Erie, the Court is skeptical of this somewhat novel argument and is unaware of any binding case law from within the Third Circuit or Pennsylvania that has adopted St. Peter's distinction between occurrence-based policies and so-called "wrongful act" policies.  In this regard, the Court notes that at least one of the insurance polices under consideration in Erie expressly insured against "acts committed or alleged to have been committed . . . during the policy period[.]"  Erie, 935 F. Supp. 610, 612 (W.D. Pa. 1996) (emphasis added).  Notwithstanding this terminology, the court construed the policy as an occurrence-based policy and evaluated coverage issues in accordance with the rules enunciated in Appalachian.  As discussed above, the district court's interpretation and opinion were subsequently affirmed on appeal.  Erie, 109 F.3d 156 (3d Cir. 1997).

[10]  For its part, Dauphin County "recognizes and acknowledges that the Court . . . found that the Rector case does not support Defendant Harrisburg's position in similar circumstances."  (Doc. No. 223 at 12.)

relief were entirely unsuccessful until his final habeas petition lead to his release from prison in

2003.  However, in reciting these facts, Crawford does not allege any distinct wrongful acts or

offenses perpetrated by any <u>Crawford</u> defendant other than those alleged to have been committed

between 1972 and 1978, nor does Crawford suggest that he has incurred injuries distinct from

those he suffered as the result of his arrest, prosecution, and ultimate conviction.  For these

reasons, the Court finds that Coregis is not obligated to provide insurance coverage to Harrisburg

or Dauphin County under the terms of the policies before the Court.

**IV.   Conclusion**

Upon consideration of each of the insurance policies before the Court relating to the

pending dispositive motions, together with a careful review of the allegations set forth in the

underlying complaint, the Court finds that Coregis is not obligated to provide Harrisburg or

Dauphin County with a defense or indemnity in the <u>Crawford</u> litigation under any of the

occurrence policies that are the subject of the cross-motions because the injuries pleaded in that

litigation first occurred years prior to any of the applicable policy periods.  Accordingly, Coregis

is entitled to entry of judgment in its favor with respect to those policies.  An appropriate order

follows this opinion.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **COREGIS INSURANCE COMPANY,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | **Civil Action No. 1:03-CV-920** |
| **CITY OF HARRISBURG, et al.,** | : | |
| | : | |
| **Defendants and Third-Party** | : | **(Judge Kane)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ST. PAUL FIRE AND MARINE** | : | |
| **INSURANCE COMPANY, et al.,** | : | |
| | : | |
| **Third-Party Defendants** | : | |

### ORDER

**AND NOW**, this 30th day of March, 2006, for the reasons set forth in the within memorandum, **IT IS HEREBY ORDERED THAT** Coregis's Motion for Summary Judgment (Doc. No. 203) is **GRANTED** and Harrisburg's cross-motion for summary judgment (Doc. No. 240) is **DENIED**.  In accordance with this Order, Coregis is entitled to entry of a declaratory judgment that it is not contractually obligated to provide defense or indemnity to Harrisburg or Dauphin County in connection with the Crawford litigation under the policies that are the subject of the motion.  The Clerk of Court shall refrain from entering Judgment in favor of Coregis until the close of this action.

_____S/ Yvette Kane_____
Yvette Kane
United States District Judge
