**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **COREGIS INSURANCE COMPANY,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | **Civil Action No. 1:03-CV-920** |
| **CITY OF HARRISBURG, et al.,** | : | |
| | : | |
| **Defendants and Third-Party** | : | **(Judge Kane)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ST. PAUL FIRE AND MARINE** | : | |
| **INSURANCE COMPANY, et al.,** | : | |
| | : | |
| **Third-Party Defendants** | : | |

**MEMORANDUM**

Pending before the Court are cross-motions for summary judgment filed by third-party

defendant St. Paul Fire and Marine Insurance Company ("St. Paul") and Defendant City of

Harrisburg.  (Doc. Nos. 243, 245.)  The motions are fully briefed and ripe for disposition.  By its

motion, St. Paul seeks entry of an order declaring that St. Paul is not contractually obligated to

defend or indemnify Harrisburg under certain occurrence-based insurance policies that United

States Fidelity and Guaranty Company ("USF&G")[1] issued the city between 1976 and 1978 with

respect to the underlying civil rights action of Steven D. Crawford v. Commonwealth of

---

[1]       In 1998, St. Paul merged with USF&G.  As a result of this merger, USF&G
became a wholly-owned subsidiary of St. Paul.  (Doc. No. 254 n.1.)

Pennsylvania, et al., Civil Action No. 1:CV-03-693 ("Crawford").[2]  In contrast, Harrisburg

argues that the terms and conditions of the USF&G policies obligate St. Paul to provide the city

with a defense and, if necessary, indemnification in the Crawford action.  For the reasons that

briefly follow, the Court finds that the terms and conditions of the USF&G policies, which

provide coverage only against damages arising from bodily injury and property damage, do not

obligate St. Paul to defend Harrisburg in the Crawford litigation.  Accordingly, the Court will

grant St. Paul's motion for summary judgment and Harrisburg's cross-motion will be denied.

## I.      BACKGROUND

On June 2, 2003, Coregis Insurance Company commenced the instant action by filing a

complaint seeking a declaratory judgment that certain insurance policies issued to Harrisburg

and Dauphin County do not provide coverage for the underlying Crawford action.  Harrisburg

and Dauphin County each answered Coregis's complaint on August 4, 2003.  Thereafter, on

August 14, 2003, Harrisburg filed a third-party complaint against a number of insurance

companies that allegedly issued policies to the city between 1972 and 2003, including St. Paul.

All of the insurance companies denied that Harrisburg was entitled to coverage under the

respective policies.  By the third-party complaint, Harrisburg seeks, inter alia, entry of an order

declaring that the third-party defendants are under a duty to defend Harrisburg and its additional

insureds under each of the subject insurance policies.  On August 19, 2005, St. Paul filed its

---

[2]      Steven D. Crawford commenced the underlying civil rights action following his
2003 release from prison after having been incarcerated for 28 years for the murder of John
Eddie Mitchell.  Crawford was released after his attorney discovered certain potentially
exculpatory evidence that allegedly had been suppressed by law enforcement officers involved in
Crawford's prosecution and trial.  Crawford also alleges that these officers altered evidence and
testified falsely during each of Crawford's three trials held in 1974, 1977, and 1978.

motion for summary judgment seeking entry of an order declaring that the insurer has no duty to

defend or indemnify Harrisburg under certain occurrence-based insurance policies issued to the

city between 1976 and 1978.  Also on August 19, 2005, Harrisburg cross-moved for summary

judgment on its claims that St. Paul is contractually obligated to defend and, if necessary,

indemnify the city in connection with the Crawford action under each of St. Paul policies issued

between 1976 and 1978.

## II.      STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  A factual dispute is material if it might affect the outcome

of the suit under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A factual dispute is genuine only if there is a sufficient evidentiary basis which would allow a

reasonable fact-finder to return a verdict for the non-moving party.  Id. at 249.  The nonmoving

party receives the benefit of all reasonable inferences.  Sempier v. Johnson & Higgins, 45 F.3d

724, 727 (3d Cir. 1995).

Once the moving party has shown that there is an absence of evidence to support the

claims of the non-moving party, the non-moving party may not simply sit back and rest on the

allegations in the complaint.  Instead, it must "go beyond the pleadings and by [its] own

affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate

specific facts showing that there is a genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S.

317, 324 (1986).  Summary judgment should be granted where a party "fails to make a showing

sufficient to establish the existence of an element essential to that party's case and on which that

party will bear the burden at trial."  Id. at 322.

## III.   DISCUSSION

When the material facts are not in dispute, the determination of coverage under an

insurance contract is a question of law to be decided by the Court.  Pacific Indem. Co v. Linn,

766 F.2d 754, 760 (3d Cir. 1985).  Under Pennsylvania law, the question of whether an insurance

company has a duty to defend is determined by comparing the allegations contained within the

four corners of the underlying complaint against the terms and conditions of the insurance policy

at issue.[3]  Id. (citing Wilson v. Md. Cas. Co., 377 Pa. 588, 105 A.2d 304 (Pa. 1954) ("The

obligation to defend is determined solely by the allegations of the complaint in the action").

Under Pennsylvania law, an insurer is obligated to defend an insured "whenever an underlying

complaint may 'potentially' come within the insurance coverage."  Frog, Switch & Mfg. Co. v.

Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999) (citation omitted).  To determine whether

this duty is triggered:

> we must first look to the complaint filed against the insured.  "It
> is not the actual details of the injury, but the nature of the claim
> which determines whether the insurer is required to defend."
> Springfield Township v. Indemnity Ins. Co. of North America,
> 361 Pa. 461, 64 A.2d 761 (1949).  After discerning the facts alleged
> in the complaint, we then must decide whether, if those facts were
> found to be true, the policy would provide coverage.  If it would,
> then there is a duty to defend.

---

[3]      All parties appear to agree that Pennsylvania law governs the dispute at issue, and
no party has asserted any choice of law arguments to the contrary.  For this reason, and in
accordance with the considerations discussed in See W. World Ins. Co. v. Reliance Ins. Co., 892
F. Supp. 659, 662 & n.6 (M.D. Pa. 1995) (analyzing choice of law issues in a coverage dispute),
the Court finds that Pennsylvania governs this matter.

D'Auria v. Zurich Ins. Co., 507 A.2d 857, 859 (Pa. Super. 1986)(citations omitted).  Thus, "[i]f a

single allegation of a complaint is potentially covered by a policy, an insurer has an obligation to

defend its insured against all claims until there is no possibility of recovery for a covered claim."

CAT Internet Sys., Inc. v. Providence Washington Ins., 153 F. Supp. 2d 755, 759 (E.D. Pa.

2001) (citing Frog, Switch, 193 F.3d at 746).

### 1.      The USF&G Policies

In each of 1976, 1977, and 1978, USF&G issued Harrisburg municipal insurance policies

(collectively, "USF&G Policies") that each provided Harrisburg with a maximum of $300,000 of

comprehensive general liability coverage for bodily injury and property damage liability.[4]  (Doc.

No. 254, Ex. A, B, C.)  The insuring agreement of each of the USF&G Policies provides as

follows:

> The Company will pay on behalf of the Insured all sums which the
> Insured shall become legally obligated to pay as damages because of
>
> A.      bodily injury or
> B.      property damage
>
> to which this insurance applies, caused by an occurrence and the
> Company shall have the right and duty to defend any suit against
> Insured seeking damages on account of such bodily injury or
> property damage, even if any of the allegations of the suit are
> groundless, false or fraudulent, and make such investigation and
> settlement of any claim or suit as it deems expedient, but the
> Company shall not be obligated to pay any claim or judgment or
> to defend any suit after the applicable limit of the Company's
> liability has been exhausted by payment of judgment or settlements.

---

[4]      The 1976 USF&G policy, Policy No. MP 15298, has an effective date from June
1, 1976 to June 1, 1977.  (Doc. No. 254, Ex. A.)  The 1977 USF&G Policy, Policy No. MP 3220,
has an effective date from June 1, 1977 to June 1, 1978.  (Id. Ex. B.)  The 1978 USF&G Policy,
Policy No. 380070, has an effective date from June 1, 1978 to June 1, 1979.  (Id. Ex. C.)

Each of the Policies define "bodily injury" as follows:

> "bodily injury" means bodily injury, sickness or disease sustained by
> any person which occurs during the policy period, including death at
> any time resulting therefrom[.]

(Id., Ex. G at 7993.)  The policies define property damage as:

> (1) physical injury to or destruction of tangible property which occurs
> during the policy period, including the loss of use thereof at any time
> resulting therefrom, or
> (2) loss of use of tangible property which has not been physically injured
> or destroyed provided such loss of use is caused by an occurrence during
> the policy period.

(Id.)  The Policies define "occurrence" as follows:

> "occurrence" means an accident, including continuous or repeated
> exposure to conditions, which result in bodily injury or property
> damage neither expected or intended from the stand point of the
> insured.

(Id.)  Accordingly, in order for Harrisburg to establish that it is entitled to coverage under the

Policies for the claims asserted in the Crawford complaint, the city must demonstrate that it

could become legally obligated to pay damages because of "bodily injury" or "property damage"

caused by an "occurrence" as those terms are defined in the Policies.

>    **2.      Crawford does not allege claims of property damage or bodily injury and his
>             claims of emotional injury do not constitute "bodily injury" under
>             Pennsylvania law.**

The Crawford complaint does not include any allegations of property damage that would

trigger coverage under the USF&G Policies, and Harrisburg does not argue that it is entitled to

coverage for such liability.  Instead, Harrisburg contends that St. Paul is obligated to provide the

city with "bodily injury" coverage.  However, this Court has previously found that the Crawford

6

complaint does not contain any allegations of bodily injury.[5]   (See Doc. No. 309.)   Specifically,

the Court found that Crawford does not allege claims of bodily injury and his claims of

emotional injury do not constitute "bodily injury" under Pennsylvania law.   The Court finds no

basis to reconsider this finding, and the arguments Harrisburg offers in support of its contention

that St. Paul is obligated to provide bodily injury coverage are identical to those that this Court

has previously rejected.

    As noted, the USF&G Policies each define "bodily injury" as "bodily injury, sickness or

disease . . . ."   (Doc. No. 254, Ex. G.)   A careful reading of the Crawford complaint does not

reveal any claims that come within this definition.   Crawford does claim that he suffered

emotional harm as a result of his prosecution and imprisonment.   (Crawford Compl. ¶ 91.)

However, as Judge McClure of this Court has previously found, "[t]he Pennsylvania courts have

soundly rejected the contention that policy definitions of injury or bodily injury encompass

mental or emotional harm."   Kline v. The Kemper Group, 826 F. Supp. 123, 129-30 (M.D. Pa.

1993) (citation omitted).   This finding has been confirmed by the Pennsylvania Superior Court.

See Philadelphia Contributionship Ins. Co. v. Shapiro, 798 A.2d 781, 787 (Pa. Super. Ct. 2002)

---

[5]      Harrisburg has also attempted to demonstrate that Crawford has alleged bodily injury by pointing to Crawford's deposition testimony that he suffered "numerous physical injuries, including, inter alia, high blood pressure, loss of appetite, headaches, stomach problems, stress, contamination in the water system, physical assaults, bruises, injuries from a fall, nightmares, hearing loss and other physical ailments." (Doc. No. 246 at 13.)  The Court rejects Harrisburg's attempt to establish allegations of bodily injury by relying on Crawford's deposition testimony because "[t]he insurer's obligation to defend is fixed solely by the allegations in the underlying complaint." D'Auria v. Zurich Ins. Co., 507 A.2d 857, 860 (Pa. Super. Ct. 1986).  Accordingly, under Pennsylvania law, an insurer's duty to defend is triggered only by the factual averments that comprise the underlying cause of action. Erie Ins. Exch. v. Muff, 851 A.2d 919, 926 (Pa. Super. Ct. 2004); D'Auria, 507 A.2d at 859.  The absence of any allegation of bodily injury in the underlying complaint overrides Harrisburg's attempt to create such claims by relying on Crawford's deposition testimony.

(finding that Judge McClure "accurately interpret[ed] Pennsylvania law" in finding that emotional distress cannot constitute "bodily injury").  Other federal and state courts within Pennsylvania have followed this holding.  See, e.g., Arc Water Treatment Co. v. Hartford Cas. Ins. Co., 2002 WL 32392863, at *3 (E.D. Pa. March 27, 2002) ("Under Pennsylvania law, a claim for emotional distress that has not resulted in physical injury does not constitute a claim for 'bodily injury'"); Allstate Ins. Co. v. Montalbano, 2001 WL 876793, at *2-3 (E.D. Pa. May 17, 2001); Zerr v. Erie Ins. Exch., 667 A.3d 237, 239 (Pa. Super. Ct. 1995).

In spite of the foregoing cases, Harrisburg argues that claims for emotional distress, embarrassment, humiliation, and fear are "as a matter of Pennsylvania law . . . covered by bodily injury coverage."  (Doc. No. 276, at 9.)  In support of this assertion, Harrisburg relies exclusively on Sinn v. Burd, 404 A.2d 672, 684-85 (Pa. 1979) and Anthem Casualty Insurance Company v. Miller, 729 A.2d 1227, 1228-29 (Pa. Super. Ct. 1999).  However, neither of these cases stands for the proposition that claims of emotional distress are automatically subject to bodily injury coverage.

Sinn holds only that a plaintiff can maintain a cause of action for mental distress or emotional injury where such injury is reasonably foreseeable, even where the plaintiff was outside the zone of danger and even where the plaintiff did not also suffer physical injury.  Sinn, 404 A.2d at 684-85.  Sinn in no way addresses whether an insured is entitled to "bodily injury" insurance coverage where the underlying action alleges only emotional injury.

In Anthem, the Pennsylvania Superior Court reviewed an order granting summary judgment in favor of a plaintiff who had asserted a claim for negligent infliction of emotional distress against an insurer after witnessing her husband being fatally struck by an automobile.

8

According to the Superior Court, the appellant-insurer raised only one question on appeal: "Is the wife's claim for negligent infliction of emotional distress arising out of the same motor vehicle accident in which her husband was killed subject to the same 'per person' liability as the claim which she presented to the other driver's liability insurer as administratrix of her husband's estate?" 729 A.2d at 1228. The court rejected the insurer's specific contention that the insured could "recover for her claim of emotional distress only if her emotional distress constitutes bodily injury that is separate and distinct from the bodily injuries sustained by her husband." Id. To support its argument, Anthem attempted to analogize plaintiff's claims of emotional injury to a claim for loss of consortium, which Pennsylvania law treats as a derivative claim. Id. The Superior Court rejected this argument, basing its conclusion on Pennsylvania case law that allows a plaintiff to recover on a claim for emotional distress if the infliction of emotional distress was reasonably foreseeable. Id. Thus, in rejecting Anthem's argument, the Superior Court was merely amplifying the rule that "a claim for negligent infliction of emotional distress does not arise from the injuries sustained by the victim, but rather it arises from the witnessing of the accident." Id. (citing Sinn v. Burd, 404 A.2d 672, 678-79 (Pa. 1979)). In resolving the appeal, the Superior Court specifically declined to reach Anthem's argument that the plaintiff's claim for emotional distress was not a separate bodily injury covered by the insured's policy: "Because we have determined that Fay's claim is a separate claim, not derived from her husband's underlying bodily injury, we need not reach the merits of this issue." Id. at 1229. Nothing in the brief Anthem opinion specifically provides that claims for emotional injury are automatically subject to "bodily injury" insurance coverage, and in fact the Superior Court did not discuss in any way the specific provisions of the Anthem policy in issue.

Accordingly, the Court cannot agree with Harrisburg that <u>Sinn</u> or <u>Anthem</u> require that St. Paul provide Harrisburg with bodily injury coverage for the <u>Crawford</u> litigation on the basis that Crawford has claimed emotional injury, because such injury does not constitute "bodily injury" under Pennsylvania insurance law.

**3.      Harrisburg is not entitled to coverage on the basis of Crawford's claims of negligence alone.**

Harrisburg's final argument appears to be that "bodily injury" insurance coverage necessarily extends to all civil rights claims that are predicated, even in part, on claims of negligent supervision, without regard to the specific type of injury alleged.  In support of this argument, Harrisburg has relied on a number of cases that contain no such holding.  Moreover, the cases Harrisburg cites all involved claims where the underlying action manifestly contained allegations of actual physical bodily injury.  For example, in <u>Grant v. North River Insurance Company</u>, 453 F. Supp. 1361 (N.D. Ind. 1978), one of the plaintiffs in the underlying action died following gunshot wounds, and the other plaintiffs alleged that they were physically wounded and permanently disabled as a direct consequence of law enforcement officers' conduct.  <u>Id.</u> at 1364.  In <u>Strouss v. Fireman's Fund Insurance Co.</u>, 2005 WL 418036 (E.D. Pa. Feb. 22, 2005), the plaintiff in the underlying action alleged that he sustained a bullet wound and a shattered femur resulting from defendants' conduct.  <u>Id.</u> at *1.  In <u>General Accident Insurance Co. v. Allen</u>, 708 A.2d 828 (Pa. Super. Ct. 1998), the plaintiffs in the underlying action alleged that they suffered bodily injury in connection with sexual molestation.  <u>Id.</u> at 829.  In <u>Britamco Underwriters, Inc. v. Weiner</u>, 636 A.2d 649 (Pa. Super. Ct. 1994), the plaintiff in the underlying litigation claimed that he had sustained injuries after being assaulted and physically struck in the neck by one of defendant's employees.  <u>Id.</u> at 650.  All of the cases address, <u>inter</u> <u>alia</u>, whether

an insurer is obligated to defend an insured from claims of bodily injury on the basis that the

insured was negligent in allowing the conduct that was alleged to have caused actual bodily

injury.  Moreover, none of these cases stands for the proposition that an insured is entitled to

coverage simply because the underlying plaintiff alleges negligence on the part of the insured;

clearly, a finding of coverage necessarily depends on the type of injury actually alleged, and

whether the insurance policy in issue provides coverage for such injury.

In contrast to these cases, the Crawford complaint is devoid of any claims of bodily

injury, and the foregoing cases therefore do not support Harrisburg's claim that St. Paul is

obligated to defend against Crawford's allegations simply because he has claimed the city was

allegedly negligent in supervising its employees.  In the absence of a claim of bodily injury, the

Court rejects Harrisburg's argument that Crawford's allegations of negligence alone impose

upon St. Paul an obligation to defend the city in the underlying litigation.

## IV.    CONCLUSION

The Court finds that Harrisburg has failed to demonstrate that it is entitled to coverage in

the Crawford litigation under any of the USF&G Policies that are the subject of the cross-

motions under consideration.  The policies provide occurrence-based coverage for bodily injury

and property damage, neither of which is alleged in the Crawford complaint.  Accordingly, the

Court finds that St. Paul is not contractually obligated to provide Harrisburg with defense or

indemnity coverage under any of the USF&G Policies with respect to the Crawford litigation,

and the insurer is entitled to entry of summary judgment in its favor.  An appropriate order

follows this memorandum.

11

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **COREGIS INSURANCE COMPANY,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | **Civil Action No. 1:03-CV-920** |
| **CITY OF HARRISBURG, et al.,** | : | |
| | : | |
| **Defendants and Third-Party** | : | **(Judge Kane)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ST. PAUL FIRE AND MARINE** | : | |
| **INSURANCE COMPANY, et al.,** | : | |
| | : | |
| **Third-Party Defendants** | : | |

**ORDER**

And now, this 30th day of March, 2006, for the reasons set forth in the within memorandum, **IT IS HEREBY ORDERED THAT** St. Paul Fire & Marine Insurance Company's motion for summary judgment (Doc. No. 243) is **GRANTED**.  **IT IS FURTHER ORDERED THAT** the City of Harrisburg's cross-motion for summary judgment (Doc. No. 245) is **DENIED**.  The Clerk of Court shall refrain from entering judgment in favor of St. Paul until the conclusion of this action.

          S/ Yvette Kane
Yvette Kane
United States District Judge